IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


COLUMBIA GAS TRANSMISSION, LLC,

      Plaintiff,

v.                                    Crim. Action No. 1:20-CV-238
                                              (Judge Kleeh)

MICHAEL P. HEASTER, JR.,

      Defendant.


## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]

Pending before the Court is the Plaintiff's Motion for Preliminary Injunction [Dkt. No. 2], Defendant's Motion to Dismiss [Dkt. No. 9], and Plaintiff's Motion to Strike [Dkt. No. 16]. For the reasons discussed herein, each of those motions is **DENIED**.

### I. PROCEDURAL HISTORY

On October 2, 2020, Plaintiff Columbia Gas Transmission, LLC, ("Columbia Gas") filed a verified complaint against Defendant Michael P. Heaster, Jr., ("Mr. Heaster") alleging three causes of action: (1) Preliminary Injunction, (2) Permanent Injunction, and (3) Breach of Contract. [ECF No. 1]. On the same day, Columbia Gas filed a Motion for Preliminary Injunction [ECF No. 2], wherein it asks the Court to enter a preliminary injunction to enjoin Mr. Heaster as well as any non-parties from preventing Columbia from accessing its pipeline, and requiring Mr. Heaster to unlock the

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]

gate, pre-judgment and post-judgment interest, and any other relief the Court may deem appropriate.[1]

On October 8, 2020, Mr. Heaster filed a Motion to Dismiss for failure to join indispensable parties under Rule 12(b)(7) of the Federal Rules of Civil Procedure. [ECF No. 9]. At the October 9, 2020, hearing, the Court heard argument on the Motion to Dismiss and took testimony and documentary evidence on the Motion for Preliminary Injunction. At the hearing, the Court ordered the parties to file supplemental briefs in support of their respective positions on the Motion for Preliminary Injunction on or before 5:00 p.m. on October 14, 2020 and were instructed to include pictures and maps in support to clarify for the Court the morass of referenced roads, paths and rights of way. On October 14, 2020, Mr. Heaster filed "Defendant's Brief in Opposition to Preliminary

---

[1] In addition to the Court's reasoning outlined below in denying Columbia Gas's Motion for Preliminary Injunction against Mr. Heaster individually, it also declines to issue a preliminary injunction against any non-party as Columbia Gas has failed to show, as required under Rule 65 of the Federal Rules of Civil Procedure, a non-party is acting in concert or participation with Mr. Heaster, the only named party. See F.R.C.P. 65(d)(2)(C); see also Little v. Associated Tech. Training Servs., Inc., 1993 WL 498282, *4 (D.S.C. Dec. 3, 1993). As Judge Learned Hand stated: "[A court] cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is *pro tanto brutum fulmen*, and the persons enjoined are free to ignore it." Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832-33 (2d Cir. 1930); see also Trump v. Hawaii,- U.S. -, 138 S. Ct. 2392, 2425 (2018) (Thomas, J. concurring) (expressing skepticism district courts possess the authority to issue universal injunctions).

Injunction" [ECF No. 12], and Columbia Gas filed "Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction" [ECF No. 13]. On October 15, 2020, Mr. Heaster filed "Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction" [ECF No. 14].[2] That same day, Columbia Gas filed "Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction or, in the Alternative, Reply in Opposition to Defendant's Response to Plaintiff's Supplemental Memorandum" [ECF No. 16].  The issues relevant to the Motion for Preliminary Injunction, Motion to Dismiss and Motion to Strike have been fully briefed and the parties were afforded the opportunity to be fully heard on each of those motions, including offering evidence to the Court.  Thus, those motions are ripe for decision.

## II. FINDINGS OF FACT

Based on the pleadings and the testimony during the hearing, the Court makes the following factual findings. Defendant Michael P. Heaster, Jr., Charles P. Heaster, Patsy J. Heaster, Clarence B. Connor, Dawn E. Connor, Michael P. Heaster, Keiko A. Heaster,

---

[2] Having failed to include any drawings or maps in his initial post-hearing submission, Mr. Heaster finally included pictures and maps for the Court's review, despite the Court's order the parties file such illustrative exhibits with their initial submissions by 5:00 p.m. on October 14, 2020.

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]

Michael P. Heaster, Jr., and Misty Heaster, are owners of certain real property located in West Union District, Doddridge County, WV, and consisting of approximately 901.72 acres (the "property"). Compl., ECF No. 1, at ¶ 9.

The property is subject to at least five (5) agreements dated January 12, 2018: The Easement and Right-Of-Way Agreement (Compl. Ex. B, Doc. 1-2), Addendum to the Easement and Right-Of-Way Agreement (Compl. Ex. C, Doc. 1-3), Temporary Work Space Easement Addendum (Compl. Ex. D, Doc. 1-4), and Temporary Access Easement with attached Addendum (Compl. Ex. E, Doc. 1-5).[3] Id. ¶ 10. These agreements are by and between Columbia Gas and all owners of the property. The Easement and Right-Of-Way Agreement provides Columbia Gas with an easement and right-of-way for the purposes of constructing, inspecting, maintaining, operating, repairing, replacing, altering, changing the size of, upgrading, reconstructing, and removing or abandoning in place one pipeline for the transportation of natural gas on, under, across, or through a strip of land 50 feet in width on the property. Id. ¶ 11. In exchange for execution of the agreements, Mr. Heaster was compensated monetarily. Id. ¶ 18. Specifically, Mr. Heaster

---

[3] The Court notes that "at least" 5 agreements may apply as the parties referenced another document applicable to the "Harper tract" during the October 9, 2020 hearing. As discussed herein, the Court remains ignorant to that agreement's applicability and provisions as no party has submitted it for the record.

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT.
NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

received $228,000 while the entire amount paid to members of the
Heaster family exceeded $650,000.

The Temporary Access Easement executed by Mr. Heaster and
Columbia Gas is the agreement most at issue in this case. The
Temporary Access Easement gives Columbia Gas "the right, license,
liberty . . . and easement to use that certain strip of land
located on [the property] described . . . in <u>Exhibit A</u> . . . for
the movement of equipment, machinery, vehicles, personnel,
supplies and any other purpose associated with the original
construction of the Project, including . . . construction of . .
. reclamation, mitigation and restoration activities related to []
the Project." <u>See</u> <u>Id.</u> ¶ 13 (Compl. Ex. E, ECF No. 1-5). The
Temporary Access Easement commenced on January 12, 2018 and does
not terminate until completion of the original construction of the
Project, including completion of any reclamation, mitigation, or
construction activities. Compl. ¶ 15. The Temporary Access
Easement also provides that Columbia Gas has all rights and
privileges necessary for the full use of the rights granted by the
Temporary Access Agreement. <u>Id.</u> ¶ 14. (Compl. Ex. E, ECF No. 1-
5).

The three documents attached as Exhibit A to the Temporary
Access Easement contain maps depicting an overview of the
Mountaineer Xpress Project. The first attached Exhibit A includes
Access Road 010 ("AR 010") and Access Road 011 ("AR 011"). That

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

document portrays AR 010 and AR 011 splitting into a "Y" shape, with both roads running perpendicular to the proposed pipeline. <u>See</u> ECF No. 1-5 at 8.. Both AR 010 and AR 011 intersect with the proposed pipeline as shown at two distinct points the map. <u>See id</u>. Exhibit A to the Temporary Access Easement also includes a legend to the map, located at the bottom left of the page, defining AR 011 as an "Access Road Centerline" while AR 010 is not so marked. <u>See id</u>. The parties do not dispute Columbia Gas's contractual right to use AR 011; the conflict lies in whether Columbia Gas has a contractual right to use AR 010 under the Temporary Access Easement.

Pursuant to these agreements, Columbia Gas began initial construction and reclamation phases of the Mountaineer Xpress Pipeline: a multi-phase project. Compl. ¶ 16. The final reclamation has not yet been completed, and Mr. Heaster has requested that Columbia Gas perform additional reclamation associated with the construction. <u>Id.</u> The Mountaineer Xpress Pipeline is a thirty-six-inch pipeline with natural gas currently flowing through it at approximately 2.1bcf and at a pressure of 1,400#. <u>Id.</u> ¶ 17.

In 2019,[4] a slip on the property occurred, and has continued to grow in severity. <u>Id.</u> ¶ 19. On or about September 17, 2020,

---

[4] There is a discrepancy in the record regarding exactly when the slip occurred. Columbia Gas states in the complaint that it occurred in spring 2019, a Columbia Gas witness testified it

Columbia Gas began its work to mitigate and repair the slip via AR 010. Id. ¶ 19. On or about October 1, 2020, Mr. Heaster locked the gate to the property on AR 010, which locked out Columbia Gas from access to AR 010 and allegedly locked in several pieces of Columbia Gas's equipment. Id. ¶ 19–20. Columbia Gas alleges that the locked gate further prevents it from accessing the pipeline construction project and prevents it from continuing its mitigation efforts. Id. ¶ 20. Columbia Gas also alleges it is necessary for the gate to be unlocked so that Columbia Gas can stabilize and mitigate the potential damage created by the slip. Id. ¶ 21. The slip is at direct risk of increasing in size and causing negative environmental impacts. Id. ¶ 22.

At the October 9, 2020 hearing, testimony was taken from a variety of witnesses, notably Anthony V. Capp, the Land Project Manager for Columbia Gas. Mr. Capp testified on direct examination that Columbia Gas is faced with no other way to access the slip for repairs other than through AR 010 without creating a significant safety concern. Mr. Capp further testified in rebuttal that if Columbia Gas in fact has a contractual right to use AR 010, the documentation supporting such contention was not presented to the Court or entered into evidence at the hearing. In

occurred in February 2020, and Mr. Heaster, through his testimony, contends it occurred in November 2019. Regardless, the slip occurred at least several months before Columbia began remediation work to repair the slip or sought relief in this Court.

fact, Mr. Capp testified that there is no agreement in the record before the Court that shows Columbia Gas has an express right to use AR 010. Mr. Heaster's testimony was similar on this issue, further contending that such agreement regarding Columbia Gas's rights to AR 010 was never signed. Further, Defendant's counsel elicited testimony that called into question whether Mr. Heaster owns the "Harper Tract" which AR 010 traverses upon.

Justin Taylor, Pipeline Integrity Engineer for TC Energy, testified that safety hazards were created by Mr. Heaster's locking the gate to AR 010 such as an increased probability of impact on the pipeline itself, possibly causing it to rupture and ignite into flame. Further, because the slip remains open, its condition continues to be unstable, and invites the possibility of retrogressing, causing further damage to the pipeline and environment. John Delachapelle, an associate of Golder Associates, Inc., testified to certain mitigation recommendations, such as unlocking the gate for access to stabilize the slip. He further testified regarding the risks involved in failing to mitigate the slip, such as retrogressing across the pipeline and damaging it.

## III. DISCUSSION

### A. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Dewhurst v. Century Aluminum Co., 649 F.3d 287,

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]**

290 (4th Cir. 2011) (quoting Winter v. Nat. Res. Def. Counsel, Inc., 555 U.S. 7 (2008)); see Peterson v. Nat'l Telecomms. & Info. Admin., 505 F. Supp.2d 313, 317 (E.D. Va. 2006) (quoting Direx Israel Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992)) (recognizing that "[a] preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it").

In order to justify the extraordinary remedy that a preliminary injunction provides, the movant has the burden of demonstrating the following: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." Dewhurst, 649 F.3d at 290 (internal quotation marks and citations omitted); see Direx Israel, 952 F.2d at 812 (indicating that the moving party bears the burden of demonstrating the propriety of a preliminary injunction). In Dewhurst, the United States Court of Appeals for the Fourth Circuit emphasized the fact that controlling precedent from the Supreme Court mandates that a plaintiff "clearly show" that he is likely to succeed on the merits. Dewhurst, 649 F.3d at 290 (quoting Winter, 555 U.S. at 22) (emphasis added).

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]

The demanding standard outlined in Dewhurst becomes even more exacting when, as here, a plaintiff seeks a preliminary injunction that mandates action, as opposed to the typical form of preliminary injunctive relief seeking to preserve the status quo pending trial. See East Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief"). Preliminary injunctions are ordinarily intended to "protect the status quo and to prevent irreparable harm during the pendency of the lawsuit or alternately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). In Microsoft, the Fourth Circuit elaborated that such "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Id. (citation omitted). The court further noted that the "application of th[e] exacting standard of review [for preliminary injunctions] is even more searching" when the movant requests relief that "is mandatory rather than prohibitory in nature." Id.

10

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT.
NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

## B. Application of Preliminary Injunction Standard

### i.   Likelihood of Success on the Merits

Considering the record before the Court at this stage, Columbia Gas has failed to make a clear showing that it would likely be successful on the merits. At issue is whether the Agreements, specifically the Temporary Access Easement, provide Columbia Gas with the express rights to use AR 010 as proposed. As stated in the agreements, West Virginia law governs. To form a valid, enforceable contract, there must be "competent parties, legal subject-matter, valuable consideration, and mutual assent." Syl. Pt. 5, <u>Virginian Export Coal Co. v. Rowland Land Co.</u>, 131 S.E. 253 (W. Va. 1926). A prima facie breach of contract claim under West Virginia law requires

> (1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result.

<u>Corder v. Antero Res. Corp.</u>, 322 F. Supp. 3d 710, 717 (N.D.W. Va. 2018). "[A] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, <u>Cotiga Dev. Co. v. United Fuel Gas Co.</u>, 128 S.E.2d 626 (W. Va. 1962).

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

While the Temporary Access Easement and the Addendum attached are valid enforceable contracts, they do not expressly provide for Columbia Gas's right to use AR 010 for the natural gas production and, at issue before the Court, for mitigation and reformation of the slip on the property. While Columbia Gas argues that Mr. Heaster has breached the agreements by locking the gate leading to AR 010, Columbia Gas has failed to provide the Court with evidence showing that a valid contract by and between Columbia Gas and Mr. Heaster provides Columbia Gas the right to use AR 010. In fact, Mr. Capp testified the agreement which allegedly provides such an easement was not provided to the Court or admitted into evidence. His testimony was even murkier as to whether the "Harper tract" agreement was assigned or transferred to Mr. Heaster or any other of the Heasters. Mr. Capp also testified that any alternative route to the slip on the property other than through AR 010 would create a significant safety concern.

In summary, the Court cannot conclude, based on the record before it now, that Columbia Gas has made a clear showing it has an express right to access the slip area via AR 010 or that it has no other alternative path to the slip. Mr. Capp was, at best, equivocal as to the options available to Columbia Gas to access the slip area. Likewise, he testified the agreement that may provide for such access via AR 010 was not provided to the Court despite the request to this Court for extraordinary relief and

left significant question as to whether it passed from "Harper" to any member of the Heaster family including Defendant Heaster. The agreements, addendums, drawings and maps in the record at this point certainly do not clearly establish Columbia Gas has a right to use AR 010. Those documents, for the reasons discussed, indicate the opposite frankly. For these reasons, Columbia Gas has failed to make a clear showing that it is likely to succeed on the merits in its breach of contract claim against Mr. Heaster.[5]

This finding precludes this Court from granting the relief Columbia as has requested. Regardless, as this order only dispenses with the request for a preliminary injunction and other remedies remain at issue, the Court will continue with its required analysis under the <u>Winter</u> factors, again, based on the current record.

## ii. Irreparable Harm

Columbia Gas will likely suffer irreparable harm in the absence of injunctive relief even though this Court cannot award

---

[5] Although the Court has found Columbia Gas has not clearly demonstrated a likelihood to prevail on the merits, that finding is based on the record as it exists after the October 9, 2020 hearing and the parties' post-hearing submissions. It is entirely possible the "missing" agreements and any other relevant evidence could lead to a different result as this matter progresses; however, that, to state the obvious, depends upon the evidence provided to this Court.

that remedy at this stage.[6] Generally, economic damages are not sufficient to establish irreparable harm. See Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) ("Mere injuries, however substantial, in terms of money, time and energy expended in the absence of [an injunction] are not enough."). Workers' safety and environmental hazards are clearly at risk in this case. This Court has previously considered safety as a factor supporting irreparable harm. See Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, No. 1:19CV182, 2019 WL 4781872, at *6 (N.D.W. Va. Sept. 30, 2019) (finding that Dominion faced irreparable harm without an injunction and noting that "if left unchecked, the slip will threaten the safety of Dominion employees, who work in close proximity to heavy machinery").

The Court makes this finding based, in part, on the safety issues that have arisen due to Mr. Heaster's interference with AR 010. Pursuant to Mr. Capp's testimony, any route alternative to AR

---

[6] The Court is certainly mindful of the emergent need to address the slip at issue here.  Columbia Gas offered overwhelming evidence of the consequences of leaving the slip unattended.  Mr. Heaster testified that he also believed the slip needed repaired and that he desired Columbia Gas to do so.  Nonetheless, he locked the gate preventing Columbia Gas from accessing AR 010.  It has become clear that alternative routes exist which Columbia Gas has the right to use albeit less convenient and perhaps even less safe to do so. This Court's Order should not be construed as standing for anything other than its plain reading including expressing an opinion as to whether the slip should or should not be remediated, how Columbia Gas navigates within its rights to do so and whether the parties could or should reach some arrangement or resolution accommodating those issues.

010 to the slip on the property would create a significant safety concern. Mr. Taylor testified that Mr. Heaster's action of locking the gate to AR 010 has created safety hazards such as increasing the probability of the slip impact on the pipeline, and that the pipeline could rupture and ignite into flame due to such impact. The impact could cause environmental wreckage and safety risks to Columbia Gas employees. Mr. Delachapelle further confirmed the dangers at play in allowing the slip to persist, due to the pipeline possibly becoming damaged by moisture and other environmental effects while its mitigation is stalled. While "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute[,]" Columbia Gas failed to provide the Court with a clear showing of evidence that it possesses a real property interest in AR 010, and directly contradicted such argument through the testimony elicited from Mr. Capp at the hearing. Therefore, while the potential harm is likely actual and perhaps even imminent, and Columbia Gas is likely to suffer irreparable harm in the absence of a preliminary injunction, Columbia Gas fails under the stringent standard outlined above.

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT.
NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

### iii.   Balance of Equities

The balance of equities tips in Columbia Gas's favor. This
Court has previously found:

> When weighing the parties' respective injuries
> and balancing the equities to determine
> whether a preliminary injunction should be
> issued, the court should consider the
> following: (1) the relative importance of the
> rights asserted and the act sought to be
> enjoined; (2) the preservation of the status
> quo; and (3) the balancing of damage and
> convenience generally.

<u>SWN Prod. Co., LLC v. Edge</u>, No. 5:15CV108, 2015 WL 5786739, at *6
(N.D.W. Va. Sept. 30, 2015) (citing <u>Sinclair Refining Co. v.
Midland Oil Co.</u>, 55 F.2d 42, 45 (4th Cir. 1932)). While the
agreements in place are enforceable as drafted, Columbia Gas argues
that it is merely seeking to exercise its express rights pursuant
to the Temporary Access Easement by using AR 010 to access the
slip. However, Mr. Capp testified that no agreement by and between
Columbia Gas and Mr. Heaster that gives Columbia Gas access to AR
010 is on the record. Mr. Heaster argues such agreement does not
exist. The balance of equities tips in favor of Columbia Gas
because of the environmental and employee hazards created by Mr.
Heaster blocking Columbia Gas from its safest route to the slip so
that mitigation can be completed.

While in granting a preliminary injunction for Columbia Gas,
the benefit to it would not be disproportionate to the injury of

Mr. Heaster, by ordering him to unlock the gate.[7] However, because Columbia Gas failed to make a clear showing it would prevail on the merits, Mr. Heaster cannot be preliminarily enjoined.

### iv.  Public Interest

The public interest factor is a much closer call than any of the other factors.  Both by statute and by court decision, the public policy in West Virginia is to encourage the exploration and development of natural resource interests.  The West Virginia Legislature has explicitly stated that "[a]llowing the responsible development of our state's natural gas resources will enhance the economy of our state and the quality of life for our citizens while assuring the long term protection of our environment." W. Va. Code § 22-6A-2(a)(8).  The Legislature has further declared that "[e]xploration for and development of oil and gas reserves in this state must coexist with the use, agricultural or otherwise, of the surface of certain land and that each constitutes a right equal to the other." Id. § 22-7-1(a)(1).  This interest has been recognized

---

[7] The Court does not intend to minimize Mr. Heaster's interest at issue here.  The right to control one's private property is a basic one in our society. See Bell v. State of Md., 378 U.S. 226, 268 (1964) ("[t]he individual is protected in the right both to use his own property as he sees fit and to receive the full fruits of its use . . . ."); see also The Oakmar, 20 F. Supp. 650, 651 (D. Md. 1937)("[O]ur law must always keep inviolate certain basic rights inherent in any free people, and one of these rights is the right to use one's property without molestation from mere trespassers. Such right will be protected by this court as long as it sits, without fear or favor.").

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]</u>

by this Court. <u>See</u> <u>Edge</u>, 2015 WL 5786739, at *6 (citing the same statutory provisions).

The public also has an interest in the enforcement of contracts. <u>See</u> <u>Western Sur. Co. v. Rock Branch Mech., Inc.</u>, No. 5:16-cv-09550, 2016 WL 6462100, at *3 (S.D.W. Va. Oct. 31, 2016); <u>see also</u> <u>Edge</u>, 2015 WL 5786739, at *6 ("The public certainly has an interest in enforcing valid leases and ensuring that parties to those leases comply with their terms. The public also has an interest in respecting the valid property rights of others.").

However, as this Court has noted, "[t]he public does not, however, have an interest in condoning the violation of . . . agreements, or refraining to respect the agreed-to rights of the parties." <u>Edge</u>, 2015 WL 5786739, at *6. Here, while Columbia Gas alleges Mr. Heaster is interfering with Columbia Gas's contractual rights to use the property to mitigate the slip, Columbia Gas has failed to provide evidence that there is a valid agreement between the parties for Columbia Gas's use of AR 010, and, in fact, has provided evidence by testimony of the opposite. Therefore, while the public interest weighs in favor of protecting natural gas resources and reclamation of the slip, it also weighs in favor of protecting the contractual rights of Mr. Heaster. Because Columbia Gas has failed to make a clear showing that it is likely to succeed on the merits in its breach of contract claim against Mr. Heaster,

Columbia Gas fails under the stringent standard to succeed on the motion for preliminary injunction.

## C. Easement Implied by Necessity

Although arguably relevant to certain of the preliminary injunction factors this Court is required to consider, Columbia Gas has focused on the alleged impossibility to access the slip and its equipment via ANY route other than AR 010.[8]  To the extent that Columbia Gas attempts to secure the relief it seeks here by an easement by necessity theory, this claim fails. West Virginia law certainly recognizes easement implied by necessity. Cantrell v. Cantrell, 829 S.E.2d 274, 285 (W. Va. 2019). The burden of proving an easement by necessity is one that must be shown by clear and convincing proof and rests with the moving party. Id.

> To establish an easement implied by necessity[,] . . . a party must prove four elements: (1) prior common ownership of the dominant and servient estates; (2) severance (that is, a conveyance of the dominant and/or servient estates to another); (3) at the time of the severance, the easement was strictly necessary for the benefit of either the parcel transferred or the parcel retained; and (4) a continuing necessity for an easement.

---

[8] Again, the record has morphed since the filing of the Verified Complaint and Motion for Preliminary Injunction.  The record currently indicates Columbia Gas has multiple options in how it accesses the slip to remediate it.  The Court certainly lacks the independent knowledge and the record is not clear on how best Columbia Gas might proceed currently so the Court leaves that question to those best qualified to decide.

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT.
NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]**</u>

<u>Id.</u> (quoting <u>Cobb v. Daugherty</u>, 693 S.E.2d 800 (W. Va. 2010). However, "[m]ere convenience or even reasonable necessity are insufficient. If there is an alternate route, even if more difficult or more expensive to use, then no easement is implied by necessity: An easement by necessity is implied only where any other route would be practicably or economically impossible." <u>Cantrell v. Cantrell</u>, 829 S.E.2d at 286. To establish an easement implied by necessity, the moving party must show that it is "strictly necessary to the productive, beneficial, economical or physical use of the dominant estate." <u>Id.</u>

Here, if Columbia Gas is attempting to argue an easement by implied necessity, it did not allege sufficient facts to prove an easement by implied necessity has been created for AR 010 nor did it elicit sufficient evidence to support such a claim at this stage during the October 9, 2020 hearing. In its most recent filing, Columbia Gas concedes it would be willing to proceed by accessing AR 010 from another direction, as offered by Mr. Heaster. [ECF No. 16]. Mr. Capp testified that while AR 010 is perhaps the safest route Columbia Gas can take to access the slip, it is not the only route. Because Columbia Gas failed to plead or prove facts showing AR 010 is strictly necessary to the productive, beneficial, economical or physical use of Columbia Gas's rights at issue, any easement by implied necessity must be denied.

### D. **Motion to Dismiss [ECF No. 9] and Motion to Strike [ECF No. 16].**

Also presently pending before this Court are Mr. Heaster's Motion to Dismiss [ECF No. 9] and Columbia Gas's Motion to Strike [ECF No. 16]. For reasons stated on the record at the October 9, 2020, hearing, the Motion to Dismiss [ECF No. 9] is **DENIED.**

Second, Columbia Gas's Motion to Strike is **DENIED.** As noted, the Court asked for post-hearing briefs by 5:00 p.m. on October 14, 2020, and both parties complied with that instruction. The Court further directed the parties to include drawings or maps in those submissions to assist the Court in deciphering the layout of the property at issue. Defendant neglected to comply with that directive instead waiting until this challenged filing to offer illustrative examples. However, the Court does not find this lack of compliance, although obvious and unexplained, to be of such a degree to warrant the extreme sanction of striking Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction. No directive or order was in place concerning response briefs leaving the Local Rules to fill the void. Defendant's submission certainly complied with the Local Rules' schedule. The Court has received and considered both Defendant's Response as well as Plaintiff's Reply to that response in crafting this Memorandum Opinion and Order.

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT.
NO. 2], MOTION TO DISMISS [DKT. NO. 9], AND MOTION TO STRIKE [DKT. NO. 16]

### IV. CONCLUSION

For the foregoing reasons, Columbia Gas has not made a clear showing it is likely to succeed on the merits of its claims. Columbia Gas failed to carry its burden of a clear showing that it is entitled to an order requiring Mr. Heaster to unlock the gate leading to AR 010 and other such relief, as it failed to show, to date, it has any contractual right to use AR 010.

THEREFORE, considering the evidence elicited at the October 9, 2020, hearing, the parties' supplemental briefings, and the pertinent statutory and case law, the Court **DENIES** the Motion for Preliminary Injunction [ECF No. 2]. The Court also **DENIES** the Motion to Dismiss [ECF No. 9] and the Motion to Strike [ECF No. 16]. This Order shall remain in force and effect pending final judgment on the merits. The October 23, 2020 hearing on the issue of a permanent injunction remains scheduled for 11:00 a.m. that day.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 16, 2020

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE