IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


COLUMBIA GAS TRANSMISSION, LLC,

      Plaintiff,

v.                              Crim. Action No. 1:20-CV-238
                                    (Judge Kleeh)

MICHAEL P. HEASTER, JR.,

      Defendant.


MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]

Pending before the Court is the Plaintiff's Motion for Permanent Injunction [ECF No. 22]. For the reasons discussed herein, the motion is **GRANTED**.

### I. PROCEDURAL HISTORY

On October 2, 2020, Plaintiff Columbia Gas Transmission, LLC, ("Columbia Gas") filed a verified complaint against Defendant Michael P. Heaster, Jr., ("Mr. Heaster") alleging three causes of action: (1) Preliminary Injunction, (2) Permanent Injunction, and (3) Breach of Contract. [ECF No. 1]. On the same day, Columbia Gas filed a Motion for Preliminary Injunction [ECF No. 2], wherein it asked the Court to enter a preliminary injunction to enjoin Mr. Heaster as well as any non-parties from preventing Columbia from accessing its pipeline, and requiring Mr. Heaster to unlock the

gate, pre-judgment and post-judgment interest, and any other relief the Court may deem appropriate.

On October 8, 2020, Mr. Heaster filed a Motion to Dismiss for failure to join indispensable parties under Rule 12(b)(7) of the Federal Rules of Civil Procedure. [ECF No. 9]. At the October 9, 2020, hearing, the Court heard argument on the Motion to Dismiss and took testimony and documentary evidence on the Motion for Preliminary Injunction. At the hearing, the Court ordered the parties to file supplemental briefs in support of their respective positions on the Motion for Preliminary Injunction on or before 5:00 p.m. on October 14, 2020 and were instructed to include pictures and maps in support to clarify for the Court the morass of referenced roads, paths and rights of way. On October 14, 2020, Mr. Heaster filed "Defendant's Brief in Opposition to Preliminary Injunction" [ECF No. 12], and Columbia Gas filed "Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction" [ECF No. 13]. On October 15, 2020, Mr. Heaster filed "Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction" [ECF No. 14].[1] That same day, Columbia Gas filed "Plaintiff's Motion to Strike

---

[1] Having failed to include any drawings or maps in his initial post-hearing submission, Mr. Heaster finally included pictures and maps for the Court's review, despite the Court's order the parties file such illustrative exhibits with their initial submissions by 5:00 p.m. on October 14, 2020.

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

Defendant's Response to Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Injunction or, in the Alternative, Reply in Opposition to Defendant's Response to Plaintiff's Supplemental Memorandum" [ECF No. 16]. After affording the parties the opportunity to be fully heard on each motion, the Court issued a Memorandum Opinion and Order Denying the Motion for Preliminary Injunction, Motion to Dismiss and Motion to Strike [ECF No. 17].

Having denied Columbia Gas any preliminary injunctive relief, and in consideration of the emergent state of the slip on the subject property, the Court set a hearing on Columbia Gas' Motion for Permanent Injunction [ECF No. 15], as sought in Count Two of the Complaint [ECF No. 1], and supplemented by counsel's argument at the October 23, 2020 hearing, and in Plaintiff's Post Hearing Brief on Motion for Permanent Injunction [ECF No. 22]. At the hearing on Plaintiff's Motion for Permanent Injunction, the Court heard testimony and the parties offered documentary evidence. Also at the hearing, the Court ordered the parties to file supplemental briefs in support of their respective positions on the Motion for Permanent Injunction on or before 5:00 p.m. on November 2, 2020 and were instructed to include proposed findings of fact and conclusions of law for the Court's review. In accordance with this order, Mr. Heaster filed "Defendant's Proposed Findings of Fact and Conclusions of Law Denying Permanent Injunction" [ECF No. 21]

and Columbia Gas filed "Plaintiff's Post Hearing Brief on Motion for Permanent Injunction." [ECF No. 22].

Thus, the motion for permanent injunction is ripe for decision.

## II. FINDINGS OF FACT

Based on the pleadings, testimony, and other evidence presented during both hearings, the Court makes the following factual findings. Defendant Michael P. Heaster, Jr., Charles P. Heaster, Patsy J. Heaster, Clarence B. Connor, Dawn E. Connor, Michael P. Heaster, Keiko A. Heaster, Michael P. Heaster, Jr., and Misty Heaster, are owners of certain real property located in West Union District, Doddridge County, WV, and consisting of approximately 901.72 acres (the "property"). Compl., ECF No. 1, at ¶ 9.

The property is subject to at least five (5) agreements dated January 12, 2018: The Easement and Right-Of-Way Agreement (Compl. Ex. B, Doc. 1-2), Addendum to the Easement and Right-Of-Way Agreement (Compl. Ex. C, Doc. 1-3), Temporary Work Space Easement Addendum (Compl. Ex. D, Doc. 1-4), and Temporary Access Easement with attached Addendum (Compl. Ex. E, Doc. 1-5) (collectively, the "Heaster" agreements).[2] Id. ¶ 10. These agreements are by and

---

[2] Although not provided to the Court during the October 19, 2020 hearing, the parties did clarify for the Court the relationship between the property made subject of this litigation and the so-

4

between Columbia Gas and all owners of the property. The Easement and Right-Of-Way Agreement provides Columbia Gas with an easement and right-of-way for the purposes of constructing, inspecting, maintaining, operating, repairing, replacing, altering, changing the size of, upgrading, reconstructing, and removing or abandoning in place one pipeline for the transportation of natural gas on, under, across, or through a strip of land 50 feet in width on the property. Id. ¶ 11. In exchange for execution of the Heaster agreements, Mr. Heaster was compensated monetarily. Id. ¶ 18. Specifically, Mr. Heaster received $228,000 while the entire amount paid to members of the Heaster family exceeded $650,000.

The Temporary Access Easement executed by Mr. Heaster and Columbia Gas is the agreement most at issue in this case. The Temporary Access Easement gives Columbia Gas "the right, license, liberty . . . and easement to use that certain strip of land located on [the property] described . . . in Exhibit A . . . for the movement of equipment, machinery, vehicles, personnel, supplies and any other purpose associated with the original construction of the Project, including . . . construction of . . . . reclamation, mitigation and restoration activities related to [] the Project." See Id. ¶ 13 (Compl. Ex. E, ECF No. 1-5). The

---

called "Harper tract" which abuts Defendant Heaster's property line and is now owned by members of his family. That property is subject to a number of similar agreements as are in dispute here. See infra at p.9.

Temporary Access Easement commenced on January 12, 2018 and does not terminate until completion of the original construction of the Project, including completion of any reclamation, mitigation, or construction activities. Compl. ¶ 15. The Temporary Access Easement also provides that Columbia Gas has all rights and privileges necessary for the full use of the rights granted by the Temporary Access Agreement. Id. ¶ 14. (Compl. Ex. E, ECF No. 1-5).

The three documents attached as Exhibit A to the Temporary Access Easement contain maps depicting an overview of the Mountaineer Xpress Project. The first attached Exhibit A clearly includes Access Road 010 ("AR 010") and Access Road 011 ("AR 011").[3] That document portrays AR 010 and AR 011 splitting into a "Y" shape, with both roads running perpendicular to the proposed pipeline. See ECF No. 1-5 at 8. Both AR 010 and AR 011 intersect with the proposed pipeline as shown at two distinct points on the map. See id. Exhibit A to the Temporary Access Easement also includes a legend to the map, located at the bottom left of the page, defining AR 011 as an "Access Road Centerline" while AR 010 is not so marked. See id. The parties do not dispute Columbia Gas's contractual right to use AR 011; the conflict lies in whether

---

[3] Nonetheless, as discussed infra, Mr. Capp testified at the October 9, 2020 hearing that no agreements were in the record before the Court evidencing a right to access AR 010.

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

Columbia Gas has a contractual right to use AR 010 under the Temporary Access Easement.

Pursuant to these agreements, in March 2018, Columbia Gas began initial construction and reclamation phases of the Mountaineer Xpress Pipeline: a multi-phase project. Compl. ¶ 16; October 9, 2020, Hearing Transcript, ECF No. 20, 42:4-20. The pipeline became operational in March 2019. Compl. ¶ 16. The final reclamation has not yet been completed, and Mr. Heaster has requested that Columbia Gas perform additional reclamation associated with the construction. Id. The Mountaineer Xpress Pipeline is a thirty-six-inch pipeline with natural gas currently flowing through it at approximately 2.1bcf and at a pressure of 1,400#. Id. ¶ 17.

In 2019,[4] a slip on the property occurred, and has continued to grow in severity. Id. ¶ 19. On or about September 17, 2020, Columbia Gas began its work to mitigate and repair the slip via AR 010. Id. ¶ 19; Oct. 9 Tr. at 28:16-29:6. On or about October 1, 2020, Mr. Heaster locked the gate to the property on AR 010, which locked out Columbia Gas from access to AR 010 and allegedly locked

_____

[4] There is a discrepancy in the record regarding exactly when the slip occurred. Columbia Gas states in the complaint that it occurred in spring 2019, a Columbia Gas witness testified it occurred in February 2020, and Mr. Heaster, through his testimony, contends it occurred in November 2019. Regardless, the slip occurred at least several months before Columbia Gas began remediation work to repair the slip or sought relief in this Court.

in several pieces of Columbia Gas's equipment. Id. ¶ 19-20.
Columbia Gas alleges that the locked gate further prevents it from
accessing the pipeline construction project and prevents it from
continuing its mitigation efforts. Id. ¶ 20. Columbia Gas also
alleges it is necessary for the gate to be unlocked so that
Columbia Gas can stabilize and mitigate the potential damage
created by the slip. Id. ¶ 21. The slip is at direct risk of
increasing in size and causing negative environmental impacts. Id.
¶ 22.

At the October 9, 2020 hearing, testimony was taken from a
variety of witnesses, notably Anthony V. Capp, the Land Project
Manager for Columbia Gas. Mr. Capp testified on direct examination
that Columbia Gas is faced with no other way to access the slip
for repairs other than through AR 010 without creating a
significant safety concern. Mr. Capp further testified in rebuttal
that if Columbia Gas has a contractual right to use AR 010, the
documentation supporting such contention was not presented to the
Court or entered into evidence at the hearing. In fact, at that
time, Mr. Capp testified that there is no agreement in the record
before the Court that shows Columbia Gas has an express right to
use AR 010. Oct. 9 Tr. at 149:4-150:12. Mr. Heaster's testimony
was similar on this issue, further contending that such agreement
regarding Columbia Gas's rights to AR 010 was never signed. Id. at
126:4-24. Further, Defendant's counsel elicited testimony that

called into question whether Mr. Heaster owns the "Harper Tract" which AR 010 traverses upon.

Justin Taylor, Pipeline Integrity Engineer for TC Energy, testified that safety hazards were created by Mr. Heaster's locking the gate to AR 010 such as an increased probability of impact on the pipeline itself, possibly causing it to rupture and ignite into flame. Further, because the slip remains open, its condition continues to be unstable, and invites the possibility of retrogressing, causing further damage to the pipeline and environment. John Delachapelle, an associate of Golder Associates, Inc., testified to certain mitigation recommendations, such as unlocking the gate for access to stabilize the slip. He further testified regarding the risks involved in failing to mitigate the slip, such as retrogressing across the pipeline and damaging it. Mr. Taylor and Mr. Delachapelle's testimony stands largely unchallenged or unrebutted.

At the October 23, 2020 hearing, Columbia Gas submitted to the Court documentary evidence regarding the Harper property ("Harper tract"), which is the property that sits to the west of the Heaster property. See Pl.'s Ex. C, ECF No. 19-2. The importance of the Harper tract became clear at the October 23, 2020, hearing, when agreements by and between Lucy E. Harper and Columbia Gas were submitted into evidence: Easement and Right-of-Way Agreement [Pl.'s Ex. C, ECF No. 19-2], Supplemental Agreement [Pl.'s Ex. D,

ECF No. 19-3], West Virginia Amendment to Right-of-Way Agreement [Pl.'s Ex. E, ECF No. 19-4], and Temporary Access Easement [Pl.'s Ex. G, ECF No. 19-5] (collectively, the "Harper agreements").

On November 15, 2016, via Plaintiff's Exhibits C, D, and G, depicting certain Harper tract agreements, Columbia Gas obtained similar right-of-way agreements to those by and between Mr. Heaster, which likewise contained the rights to use certain access roads, including Access Road 10, Access Road 11, Access Road 10.1, Access Road 12, Access Road 12.1 and Access Road 13, all located in whole or in part on the Harper Tract. See Pl.'s Ex. C, ECF No. 19-2, Pl.'s Ex. D, ECF No. 19-3, Pl.'s Ex. G, ECF No. 19-5.[5]

The Easement and Right-of-Way Agreement and Temporary Access Easement for the Harper tract specifically give Columbia Gas the right to use the remaining portions of AR 010 located on the Harper tract. See Pl.'s Ex. C, ECF No. 19-2; Pl.'s Ex. G, ECF No. 19-5. The Easement and Right-of-Way Agreement related to the Harper tract provides Columbia Gas with a "perpetual easement and right-of-way for the purposes of . . . constructing, . . . inspecting, maintaining, operating, repairing, replacing, altering, changing the size of, upgrading, reconstructing, and removing or abandoning

---

[5] Thereafter, on March 19, 2018, Columbia Gas obtained an Amendment to the Right-of-Way Agreement to amend the access roads across the Harper tract to allow for use of Access Road 13.2 and relinquish the use of Access Road 12.1 and Access Road 13. See Pl.'s Ex. E, ECF No. 19-4.

in place one pipeline for the transportation of natural gas . . . on, under, across and/or through a strip of land 50 feet in width . . . (the 'Right of Way'). . ." on the Harper tract. Pl.'s Ex. C, ECF No. 19-2. The Temporary Access Easement for the Harper tract specifically allowed Columbia Gas to use AR 010 and certain other access roads, including AR 011 to move equipment and any other purpose associated with the original construction of the Mountaineer Xpress Pipeline including, but not limited to, the construction of the pipeline; Columbia's reclamation, mitigation, and restoration activities related to pipeline; and for access, ingress, and egress to and from easements on Mr. Heaster's property or property adjacent and/or proximate to Mr. Heaster's property. Pl.'s Ex. G, ECF No. 19-5.  It seems, upon Mr. Capp's reflection after the October 9, 2020 hearing, that the Temporary Access Easement for Defendant Mr. Heaster's property conveys a similar right.  See Oct. 23 Tr. at 9:10-19; 11:11-13; 19:18; 85:22-23; 86:10-21.

The Harper tract is owned by Charles P. Heaster and Patsy Heaster, relatives of Defendant Michael Heaster, who acquired their property subject to Columbia Gas's rights with respect to the agreements covering the Harper tract. Pl.'s Ex. I, ECF No. 19-6. As Mr. Capp testified at the October 23, 2020, hearing, the Harper agreements are binding on Lucy Harper and her successors and assigns: "[The Easement and Right-of-Way Agreement] binds Lucy

Harper, successors and assigns. The covenants run with the land. This agreement and the covenants and agreements contend herein are covenants running with the land, shall be assignable whether in whole or in part, and shall be binding on the parties hereto and their respective heirs, successors and assigns." Oct. 23 Tr. at 24:21-25:4; see also Harper agreements. Columbia Gas's right to use AR 010, pursuant to the agreements submitted to the Court, is undisputed by both the Heaster and Harper agreements. While Mr. Heaster does not purport to own property rights to the Harper tract, he testified that he is the spokesman for his family, and admitted that he did lock the gate to AR 010. Oct. 23 Tr. at 109:8-24.

Mr. Heaster argues that although Columbia Gas does not have access to the slip though the locked gate leading to AR 010, Columbia Gas still has access to the slip by other access roads obtained from the Harper agreements by way of an adjoining landowner, Morris, the east tract shown in Plaintiff's Exhibit 1, via the use of South Fork Hughes River Road and Big Run Road. See Pl.'s Ex. A, ECF No. 19-1 (Mr. Heaster's proposed route depicted by the white line). While alternative routes may exist, in considering the motion for permanent injunction, this Court's decision turns on the question of whether Columbia Gas is being

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

denied a property right by Mr. Heaster locking the gate.[6] Further, the testimony and evidence presented shows that the alternative routes suggested by Mr. Heaster – whether it be AR 011 or AR 010.1, i.e. AR 10 "from the other direction" – would possibly create safety and environmental concerns due to the amount of equipment and materials Columbia Gas must utilize to repair the slip, including the difficulty of utilizing winching equipment in order to scale the 30% property grade it would face in using an alternative route. Oct. 23 Tr. at 144:14-145:22. Because Columbia Gas has an express contractual right to access AR 010 by the Harper and Heaster agreements, and Mr. Heaster admitted as much in his testimony on October 23, 2020 (Id. 93:11; 108:17-23),[7] and because Columbia Gas has proven all factors required to satisfy the

---

[6] Mr. Heaster made abundantly clear at both hearings his preference for Columbia Gas to use any number of alternative routes to complete its slip mitigation work. While the Court can conjure a scenario where such personal preferences could have been discussed if not accommodated by Columbia Gas, the filing of this action and the tone of proceedings indicates the time for such conversations has passed. Regardless, this matter hinges not on Mr. Heaster's preferences but Columbia Gas's legal rights established under the applicable agreements. Likewise, Mr. Heaster's counsel's insinuation that cost and expense is Columbia Gas's motivation is irrelevant. See Oct. 23 Tr. at 75:51-75:54. Again, the applicable agreements establish Columbia's rights or lack thereof. If such rights to access exist, Columbia Gas would be well within its prerogative to make its choices as it deems fit so long as not violative of others' rights.

[7] This stands to reason considering the same agreement that gives Columbia Gas the right to access AR 011, which Mr. Heaster does not dispute, would provide the right to access AR 010. See Compl. Ex. E, Doc. 1-5.

permanent injunction standard, this Court **GRANTS** the Motion for Permanent Injunction. See Oct. 23 Tr. at 108:9-109:17.


### III. DISCUSSION

**A. Permanent Injunction Standard**

A plaintiff must prove four elements to obtain a permanent injunction:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Mountain Valley Pipeline, LLC v. Wender, 337 F.Supp.3d 656, 673 (S.D.W. Va. 2018).

As the parties will remember from this Court's Memorandum Opinion and Order dated October 16, 2020 [ECF No. 17], in order to justify the extraordinary remedy that a preliminary injunction provides, the movant has the burden of demonstrating the following: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) (internal quotation marks and citations omitted). In its Order dated October 16, 2020 [ECF No. 17], this

Court denied preliminary injunctive relief because Columbia Gas
failed to make a clear showing that it would likely be successful
on the merits. Specifically, this Court found Columbia Gas failed
to point to a clearly established legal right to access road AR
010.  Mr. Capp conceded at the October 9, 2020 hearing that no
document in the record before the Court demonstrated Columbia Gas's
claimed right to AR 010. Oct. 9 Tr. at 149:15. However, at the
October 23, 2020 proceeding, Mr. Capp reversed course noting his
"prior testimony was not accurate."  Oct. 23 Tr. at 9:14. Exhibit
3 introduced at the October 9, 2020 hearing, the Temporary Access
Agreement, according to Columbia Gas, establishes this right.  "The
Temporary Access Agreement does state that Access Road 10 or the
portion of Access Road 10 – portions of Access Road 10 on the
subject property are called out in this agreement."  Id. at 9:16-
9:19.[8]

At the permanent injunction stage, unlike its presentation at
the preliminary injunction stage, Columbia Gas satisfied its

---

[8] The Court certainly recognizes the odd circumstances created here
– the denial of a request for a preliminary injunction but the
grant of a permanent injunction.  In the competing orders, the
Court endeavored to explain the analysis behind each decision and
believes it has adequately done so.  It falls to the parties – not
the Court – to marshal the evidence in support of their respective
positions.  Here, where the most knowledgeable witness failed to
do so initially, it leaves the Court with apparent inconsistent
conclusions.  However, based on the record developed by the
conclusion of the October 23, 2020 hearing, the Court finds
Columbia Gas has carried the burden it failed to carry previously.

burden based on the evidence presented at the October 23, 2020, hearing and the post-hearing filings. The Court discusses each requirement under the permanent injunction standard in turn.

**B. Application of Permanent Injunction Standard**

    **i.   Irreparable injury**

Columbia Gas has suffered irreparable harm at the hands of Mr. Heaster locking the gate to AR 010. Generally, economic damages are not sufficient to establish irreparable harm. See Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) ("Mere injuries, however substantial, in terms of money, time and energy expended in the absence of [an injunction] are not enough."). Workers' safety and environmental hazards are clearly at risk in this case. This Court has previously considered safety as a factor supporting irreparable harm. See Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, No. 1:19CV182, 2019 WL 4781872, at *6 (N.D.W. Va. Sept. 30, 2019) (finding that Dominion faced irreparable harm without an injunction and noting that "if left unchecked, the slip will threaten the safety of Dominion employees, who work in close proximity to heavy machinery").

The Court makes this finding based, in part, on the safety issues that have arisen due to Mr. Heaster's interference with AR 010. Pursuant to Mr. Capp's testimony, any route alternative to AR 010 to the slip on the property would create a significant safety concern. At the October 9, 2020, hearing, Mr. Taylor testified

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

that Mr. Heaster's action of locking the gate to AR 010 has created safety hazards such as increasing the probability of the slip impact on the pipeline, and that the pipeline could rupture and ignite into flame due to such impact. The impact could cause environmental wreckage and safety risks to Columbia Gas employees. Mr. Delachapelle further confirmed the dangers at play in allowing the slip to persist, due to the pipeline possibly becoming damaged by moisture and other environmental effects while its mitigation is stalled. Because "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute[,]" Mr. Heaster's unauthorized interference with Columbia Gas's contractual property rights constitutes irreparable harm. Dominion Energy Transmission, 2019 WL 4781872, at *6.

This Court and both parties are aware of the emergent nature of the slip at issue in this case, and the harm created by Mr. Heaster to that effect is actual and perhaps even imminent. Columbia Gas is likely to continue to suffer irreparable harm in the absence of a permanent injunction. At both the October 9, 2020, and October 23, 2020, hearings, Columbia Gas offered overwhelming evidence of the consequences of leaving the slip unattended. Mr. Heaster testified that he also believed the slip needed repaired

and that he desired Columbia Gas to do so.  Nonetheless, he locked the gate preventing Columbia Gas from accessing AR 010.  While it has become clear that alternative routes exist which Columbia Gas has the right to use albeit less convenient and perhaps even less safe to do so, the Court **GRANTS** Plaintiff's Motion for Permanent Injunction on this ground, finding that Columbia Gas has a contractual right to use AR 010 and that it has suffered irreparable injury.

### ii.  Other available remedies are inadequate

As stated above, "property is considered a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." Dominion Energy Transmission, 2019 WL 4781872, at *6. However, "this general rule rests on the assumption that economic losses are recoverable." Id. at *5 (internal quotation marks and citations omitted). The Court in Dominion went on to find that "[a] plaintiff may overcome the presumption against a preliminary injunction regarding wholly economic harm, in the extraordinary circumstances . . . when monetary damages are unavailable or unquantifiable." Id. (internal quotation marks and citations omitted).

Here, like in Dominion, the Court finds that if Columbia Gas continues to suffer the irreparable harm caused by Mr. Heaster locking the gate to AR 010, "it will not be able to recover those losses in this or any other litigation." Id. at *5. Further, money

18

damages would not compensate Columbia Gas for the imminent safety and environmental risks presented by the slip, as discussed at length in Section III.B.i, and the failure to repair the same. The Court **GRANTS** Plaintiff's Motion for Permanent Injunction on this ground.

### iii.  Balance of hardships

This Court has previously found in this case, and finds again here, the balance of equities tips in Columbia Gas's favor. Similar to the balance of hardships in the permanent injunction inquiry, this Court has previously found:

> When weighing the parties' respective injuries and balancing the equities to determine whether a preliminary injunction should be issued, the court should consider the following: (1) the relative importance of the rights asserted and the act sought to be enjoined; (2) the preservation of the status quo; and (3) the balancing of damage and convenience generally.

SWN Prod. Co., LLC v. Edge, No. 5:15CV108, 2015 WL 5786739, at *6 (N.D.W. Va. Sept. 30, 2015) (citing Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932)). The Heaster agreements, Harper agreements, and the Special Warranty Deed conveying the Harper tract to Charles and Patsy Hester [Pl.'s Ex. I, ECF No. 19-6], are enforceable and show Columbia Gas's express property rights to use AR 010. The balance of hardships against Columbia Gas overcomes any hardships to be suffered by Mr. Heaster by unlocking the gate. The balance of equities tips in favor of

Columbia Gas because of the environmental and employee hazards created by Mr. Heaster blocking Columbia Gas from exercising its contractual right and utilizing the safest route to the slip so that mitigation can be completed.

In granting a permanent injunction for Columbia Gas, the benefit to it would not be disproportionate to the injury of Mr. Heaster, by ordering him to unlock the gate; therefore, the Court **GRANTS** Plaintiff's Motion for Permanent Injunction on this ground.

### iv.   Public interest

The public interest factor weighs in favor of Columbia Gas. Both by statute and by court decision, the public policy in West Virginia is to encourage the exploration and development of natural resource interests. The West Virginia Legislature has explicitly stated that "[a]llowing the responsible development of our state's natural gas resources will enhance the economy of our state and the quality of life for our citizens while assuring the long term protection of our environment." W. Va. Code § 22-6A-2(a)(8). The Legislature has further declared that "[e]xploration for and development of oil and gas reserves in this state must coexist with the use, agricultural or otherwise, of the surface of certain land and that each constitutes a right equal to the other." Id. § 22-7-1(a)(1). This interest has been recognized by this Court. See

Edge, 2015 WL 5786739, at *6 (citing the same statutory provisions).

The public also has an interest in the enforcement of contracts. See Western Sur. Co. v. Rock Branch Mech., Inc., No. 5:16-cv-09550, 2016 WL 6462100, at *3 (S.D.W. Va. Oct. 31, 2016); see also Edge, 2015 WL 5786739, at *6 ("The public certainly has an interest in enforcing valid leases and ensuring that parties to those leases comply with their terms. The public also has an interest in respecting the valid property rights of others."). Through his October 23, 2020, testimony, Mr. Heaster admitted to Columbia Gas's right to use AR 010 – both on his property through the Heaster Agreements and the Harper Tract through the Harper Agreements. See Oct. 23 Tr. at 108:9-109:17.

However, as this Court has noted, "[t]he public does not, however, have an interest in condoning the violation of . . . agreements, or refraining to respect the agreed-to rights of the parties." Edge, 2015 WL 5786739, at *6. Here, while Columbia Gas has shown by documentary evidence and testimony that Mr. Heaster is interfering with Columbia Gas's contractual rights to use the property to mitigate the slip. Therefore, while the public interest weighs in favor of protecting natural gas resources and reclamation of the slip, it also weighs in favor of protecting the contractual rights of the parties. Given the clear rights in both the Heaster and Harper Agreements, coupled with Defendant's admission as to

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

Columbia Gas's right to use AR 010 under those agreements, and the uncertainty as to when potential pipeline failure may become a reality, the public interest is clear. For these reasons, the Court **GRANTS** Plaintiff's Motion for Permanent Injunction.


### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Columbia Gas's motion for a permanent injunction [ECF No. 22]. Mr. Heaster is hereby **ORDERED** to remove the lock on the gate at issue, leading to Access Road 010, also depicted in the October 9, 2020, photograph (Defendant's Hearing Exhibit 1, ECF No. 11-13), on or before **5:00 p.m. on Friday, January 15, 2021.** Mr. Heaster is hereby **ENJOINED** from placing any other items that may block Columbia Gas's access to Access Road 010. Counsel for Mr. Heaster is **ORDERED** to provide Mr. Heaster with a copy of this Memorandum Opinion and Order, along with a copy of the photograph from October 9, 2020 (Defendant's Hearing Exhibit 1, ECF No. 11-13), and shall certify via written notice filed with the Court that these documents have been served upon him. Counsel for Mr. Heaster is further **ORDERED** to file a Notice of Compliance with this Order's requirements as soon as practicable once Mr. Heaster has removed the lock in question.

This Court will convene a status conference via Zoom teleconference on **January 26, 2021 at 11:30 a.m.** The purpose of

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR PERMANENT INJUNCTION [ECF NO. 22]**

this status conference includes discussion of any remaining issues requiring the Court's attention in this matter.   Dial-in information will be provided in a separate, forthcoming order.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** January 12, 2021

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE